# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **BARBARA ANN LAVENDER,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 2:09-CV-2172-VEH |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner,** | ) |
| **Social Security Administration,** | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Claimant Barbara Ann Lavender (hereinafter "Ms. Lavender") brings this action pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act. She seeks review of a final adverse decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner"), who denied her application for Disability Insurance Benefits (hereinafter "DIB") and Supplemental Security Income (hereinafter "SSI").[1] Ms. Lavender timely pursued and exhausted her administrative

---

[1] In general, the legal standards applied are the same regardless of whether a claimant seeks SSI or Disability Insurance Benefits ("DIB") under the Social Security Act. However, separate, parallel statutes and regulations exist for SSI and DIB claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

remedies available before the Commission. The case is ripe for review pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act.[2]

## FACTUAL AND PROCEDURAL HISTORY

Ms. Lavender was 55 years of age at the time of his hearing before the administrative law judge (hereinafter "ALJ"). (Tr. 23). She has completed the eleventh grade and has received her GED. (Tr. 24). Her past work was as a manual production controller[3] at a printing company for thirteen years. (Tr. 24-25).

Ms. Lavender claims that she has been unable to work since October 6, 2006, because of back pain and pain on the right side of her body, including her hips, legs, and feet. (Tr. 26). During the hearing held on December 3, 2008, before the ALJ, Ms. Lavender testified that she can hardly walk and that her body sometimes "just locks up" because of the pain. (Tr. 15, 26). She also indicated that she cannot bend over unless she has something to prop herself on (Tr. 29), that she would have a hard time walking more than one city block (Tr. 28-29), that she has difficulty lifting a gallon of milk (Tr. 29), that she cannot sit or stand for an extended period of time (Tr. 27-28), and that her average pain level is a 10/10. (Tr. 29-30).

---

[2] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

[3] The vocational expert indicates that a manual production controller engages in heavy, semiskilled work. (Tr. 38).

Ms. Lavender maintains that as a result of her impairment, she was fired from her job at the printing company in October of 2006, due to a lack of any available light duty jobs. (Tr. 26). After being terminated from the printing company, Ms. Lavender attempted to return to work in August 2007 and worked at Heathstone Assisted Living. (Tr. 30). However, she testified that she could not maintain employment there because of her impairment and had to leave after three days. (Tr. 31). Additionally, Ms. Lavender indicated that she attempted to work at a daycare center in March 2008, but had to leave after two days due to her impairment. (Tr. 30-31, 108).

Ms. Lavender filed her application for DIB and SSI benefits on December 4, 2006. (Tr. 98, 103). This application was denied by the Commissioner on December 27, 2006. (Tr. 46). Ms. Lavender filed a written request for a hearing by an ALJ on December 28, 2006. (Tr. 61). The hearing was held on December 3, 2008. (Tr. 17). The ALJ subsequently denied Ms. Lavender's application on March 16, 2009. (Tr. 14). On March 19, 2009, Ms. Lavender filed a request for review of the ALJ's decision. (Tr. 92). The Appeals Council denied her application for review on August 28, 2009. (Tr. 1).

Ms. Lavender filed a complaint with this court on October 26, 2009, which asks for a judicial review of the ALJ's decision. (Doc. 1). This court has carefully

considered the record and, for the reasons stated below, reverses the decision of the ALJ.

## STANDARD OF REVIEW

The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales,* 402 U.S. 389, 390 (1971); *McRoberts v. Bowen,* 841 F.2d 1077, 1080 (11th Cir. 1988); *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1983); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239. This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id*.

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the

Regulations promulgated thereunder.[4]  The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  20 C.F.R. § 404.1505(a).  To establish an entitlement to disability benefits a claimant must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled.  20 C.F.R. § 404.1520(a)(4)(i-v).  The Commissioner must determine in sequence:

>   (1)   whether the claimant is currently employed;
>   (2)   whether the claimant has a severe impairment;
>   (3)   whether the claimant's impairment meets or equals an impairment listed by the Secretary;
>   (4)   whether the claimant can perform her past work; and
>   (5)   whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R.

---

[4] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, as current through February 17, 2011.

section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1999); *accord, McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps one and two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord*, *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Id*.

### FINDINGS OF THE ADMINISTRATIVE LAW JUDGE AND SUMMARY OF RECORD EVIDENCE

The ALJ concluded that Ms. Lavender has not engaged in substantial gainful activity after the alleged onset of her disability on October 6, 2006. (Tr. 10). Additionally, the ALJ found that Ms. Lavender has a medically determinable impairment of lumbar arthralgia.[5] *Id.* He based this finding on medical records from the University of Alabama at Birmingham (hereinafter "UAB") emergency room,

---

[5] "Arthralgia is joint pain; it is a symptom, not a disease. The symptom may be used as a diagnosis until the true cause of the joint pain is determined, <u>or indefinitely if examination and testing are inconclusive, but the pain persists</u>. . . . Arthralgia is a common symptom that affects virtually everyone at some point during life and occurs in women more often than men." MDGuidelines.com (accessed February 24, 2011) <http://www.mdguidelines.com/arthralgia> (emphasis added).

medical records from the Cooper Green Hospital emergency room, the DDS case analysis, medical records from Dr. Tom Edwards ("Dr. Edwards"), and medical records from Dr. Hisham Hakim ("Dr. Hakim"). (Tr. 10-11).

At UAB on January 21, 2006, and January 24, 2006, Ms. Lavender complained of back, hip, and leg pain. (Tr. 171, 173). However, the physical examinations revealed no abnormalities. *Id.*

Ms. Lavender went to Cooper Green in October 2006 and complained of back, hip, and thigh pain, but a physical examination revealed no abnormalities. (Tr. 179-182). Furthermore, the treating physician's primary diagnosis was lower back arthralgia. (Tr. 181).

On December 26, 2006, the DDS specialist concluded, after reviewing the medical records, that Ms. Lavender did not have a severe impairment. (Tr. 183). The DDS examiner was not a licensed medical doctor. (*Id.*).

Ms. Lavender saw Dr. Edwards on multiple occasions throughout October 2007, due to her complaints of lower back and thigh pain. (Tr. 189). Dr. Edwards performed spine x-rays on Ms. Lavender, and those x-rays came back normal. (Tr. 188). Ms. Lavender's treatment notes dated October 23, 2007, indicate that Dr. Edwards "denie[d] disability due to Med Rcds normal spine x-ray" and recommended that Ms. Lavender should contact a "social worker to get Food Stamps rather than

[pursuing a] disability [claim.]" (*Id.*).  There is no record of Dr. Edwards' completing a physical capacities evaluation or pain assessment of Ms. Lavender.

On November 18, 2008, Dr. Hakim performed a consultative examination on Ms. Lavender.  (Tr. 192-195).  In concluding his report, Dr. Hakim opined that "the patient's chronic back pain will interfere with daily activity such as interfering with a laborer job and that [is] what she did all her life."  (Doc. 194).  Dr. Hakim also completed a physical capacities evaluation on Ms. Lavender which indicated she was capable of performing light work.[6]  (Tr. 195).

Dr. Hakim additionally prepared a clinical assessment of pain as well as a clinical assessment of fatigue/weakness relating to Ms. Lavender.  (Tr. 196-99). Concerning the pain assessment in particular, Dr. Hakim found that "[p]ain is

---

[6] The Regulations define light work as:

(b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b) (current through October 28, 2010).

present" and that physical activity on the part of Ms. Lavender "[g]reatly increased pain [for her] to such a degree as to cause distraction from tasks or total abandonment of tasks." (Tr. 196). Dr. Hakim further indicated that Ms. Lavender's pain is consistent with her underlying medical condition. (Tr. 197).

Based on his review of the record, the ALJ determined that Ms. Lavender's impairment is not severe. (Tr. 11). In reaching this conclusion, the ALJ principally relied on the fact none of the medical records show that Ms. Lavender has any type of abnormality or physical or functional deficit. (Tr. 13). He also relies on the fact that Ms. Lavender did not seek treatment between her visits to Dr. Edwards in October 2007, and her consultative examination with Dr. Hakin in October 2008. *Id.*

The ALJ also found Ms. Lavender's testimony concerning her symptoms not to be credible. *Id.* Particularly, he found unconvincing Ms. Lavender's alleged average daily pain to be at the level of 10/10 and related limitations in her daily activities. (Tr. 13-14).

As for Dr. Hakim's opinion, the ALJ determined that it was entitled to little weight as his conclusions "were not supported by objective medical evidence." (Tr. 14). Furthermore, the ALJ found that Dr. Hakim's opinion was based on "claimant's assertions rather than objective medical evidence." *Id.* Because the ALJ concluded that Ms. Lavender did not have a severe impairment, he found that she was not

9

disabled, and it was unnecessary to proceed any further through the sequential disability framework. *Id.*

## **ANALYSIS**

This court is limited in its review of the Commissioner's decision in that the Commissioner's findings of fact must be reviewed with deference. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (citing *Graham v. Bowen*, 790 F.2d 1572, 1574-75 (11th Cir. 1986)). In contrast to factual findings, however, the Commissioner's conclusions of law are subject to an "exacting examination" or *de novo* review. *See Martin*, 894 F.2d at 1529 (citing *Graham*, 790 F.2d at 1574-75); *Martin*, 894 F.2d at 1529 ("The Secretary's failure to apply the correct legal standards or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed mandates reversal.") (citations omitted). In particular, this court has a "responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *See Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (emphasis added) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[7]

Ms. Lavender argues that the ALJ's decision is not supported by substantial

---

[7] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

evidence and that the ALJ applied improper legal standards. (Doc. 11 at 3). More specifically, Ms. Lavender asserts that "it was reversible error for the ALJ to find that she had no severe impairment" and that the ALJ should have sent her for a consultative examination. *Id.* at 7, 8. In its review, the court finds that the ALJ's decision is due to be reversed and remanded.

**I.   THE ALJ'S DETERMINATION THAT MS. LAVENDER DID NOT SUFFER FROM A SEVERE IMPAIRMENT IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.**

For a claimant to meet her burden in regards to step two of the five-step process, the regulations provide that:

> [She] must have a medically determinable "severe" physical or mental impairment or combination of impairments that meets the duration requirement. . . . [A]n impairment or combination of impairments is considered "severe" if it significantly limits an individual's physical or mental abilities to do basic work activities; an impairment(s) that is "not severe" must be a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.

SSR 96-3P, 1996 WL 374181 at *1 (S. S. A.). "Step two is a threshold inquiry." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). "It allows only claims based on the most trivial impairments to be rejected." *Id.* "The claimant's burden at step two is mild." *Id.* (emphasis added).

However, an impairment is not severe "if it does not significantly limit [the

claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). Additionally, "[a]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *McCruter v. Bowen*, 791 F.2d 1544, 1546 (11th Cir. 1986).

In evaluating the ALJ's determination adverse to Ms. Lavender at step two, the court will consider whether the record substantially shows that her arthralgia only has a minimal effect on her ability to engage in basic work activities.[8] As the Eleventh

---

[8] 20 C.F.R. § 416.921(b) provides that basic work activities are "the abilities and aptitudes necessary to do most jobs" and examples include:

1. Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

2. Capacities for seeing, hearing, and speaking;

3. Understanding, carrying out, and remembering simple instructions;

4. Use of judgment;

5. Responding appropriately to supervision, co-workers, and usual work situations; and

6. Dealing with changes in a routine work setting.

*Id.*

Circuit pointed out in *Flynn v. Heckler*, 768 F.2d 1273, 1274 (11th Cir. 1985):

> As we construe [the provision discussing severe impairments] and the caselaw interpreting that section, we are required to ask <u>whether a reasonable mind could review the appellant's evidence of [her impairment] and still conclude that that condition has only a minimal effect on her ability to perform the most general and rudimentary functions of a work activity</u>.

*Id.* (emphasis added). Therefore, the appropriate evaluative framework is whether a reasonable mind could review Ms. Lavender's evidence and still conclude that her impairment only has a minimal effect on her ability to engage in basic work activities.

During the hearing in front of the ALJ, Ms. Lavender claimed that her impairment affects her ability to engage in basic work activities. For instance, Ms. Lavender claimed that she can only sit comfortably for thirty minutes before having to stand up and change positions. (Tr. 28). Ms. Lavender also stated that she can only stand for thirty minutes without becoming uncomfortable. *Id.* She also shared that she cannot walk one city block without having to stop and that she can barely lift one gallon of milk. (Tr. 28-29). Finally, she asserted that her average daily pain is 10/10. (Tr. 30).

In rejecting Ms. Lavender's subjective complaints of pain, the ALJ expressly relied upon Ms. Lavender's having "received very little treatment for back pain since

the alleged disability onset date" as well as the absence of an "indicat[ion] [that Ms. Lavender has] received any medical treatment after October 2007." (Tr. 13; *see also* Tr. 13-14 ("These statements are particularly incredible, particularly in light of the fact that she has not received regular or ongoing medical treatment.")). However, during her hearing before the ALJ, Ms. Lavender explained that her lack of continuing medical treatment stemmed from her inability to pay. (Tr. 27 ("I didn't have - - they wouldn't see me because I didn't have no money.); *id.* ("I went to other doctors trying to get help, but nobody would see me because I didn't have no money to pay them.")). In fact, Dr. Edwards's records show that Ms. Lavender was turned away on at least one occasion because she lacked sufficient money for her co-pay. (Tr. 188).

Nowhere in his decision does the ALJ address Ms. Lavender's testimony about her inability to pay. As the Eleventh Circuit has explained:

> We agree with every circuit that has considered the issue that poverty excuses noncompliance. *See, e.g., Lovelace*, 813 F.2d at 59 ("To a poor person, a medicine that he cannot afford to buy does not exist"); *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986) (failure to follow prescribed treatment does not preclude reaching the conclusion that a claimant is disabled when the failure is justified by lack of funds); *Dover v. Bowen*, 784 F.2d 335, 337 (8th Cir. 1986) ("the ALJ must consider a claimant's allegation that he has not sought treatment or used medications because of lack of finances"); *Teter v. Heckler*, 775 F.2d 1104, 1107 (10th Cir. 1985) (inability to afford surgery does not constitute an unjustified refusal and does not preclude recovery of

14

>  disability benefits). Thus while a remediable or controllable medical condition is generally not disabling, when a "claimant cannot afford the prescribed treatment and can find no way to obtain it, the condition that is disabling in fact continues to be disabling in law." *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir.1986) (footnote omitted).
>
>  <u>In this case the ALJ explicitly noted appellant's noncompliance, but did not consider her poverty as a good excuse</u>. The problem with this case is that it is unclear from the ALJ's opinion whether or not he based his determination that appellant was not entitled to benefits on appellant's failure to follow prescribed medical treatment. Although the ALJ found that appellant's testimony was "inconsistent with the findings of her attending physicians," the only inconsistency identified by the ALJ involved noncompliance with prescribed treatment.

*Dawkins v. Bowen*, 848 F.2d 1211, 1213-14 (11th Cir. 1988) (emphasis added) (footnote omitted).

In *Dawkins*, the Eleventh Circuit "reverse[d] the judgment of the district court and remand[ed] with instructions that the case be remanded to the Secretary for determination by the ALJ as to whether appellant is disabled, without reference to her failure to follow prescribed medical treatment." *Id.*, 848 F.2d at 1214. Although *Dawkins* involved a disability determination that went beyond the second inquiry, this court sees no reason why the opinion's reasoning would not apply persuasively (if not mandatorily) to a disability decision that relies upon the absence of continuing medical treatment to substantially support the administrative finding that the claimant does not suffer from a severe impairment. Accordingly, because the ALJ never

15

addressed Ms. Lavender's testimony about her impoverished financial status, his determination that her impairment was non-severe due to a lack of ongoing medical treatment is not supported by substantial evidence and is due to be remanded on the basis of *Dawkins*.

Additionally, the court finds that while the ALJ has attempted to discredit Ms. Lavender's testimony that her pain "rates a 10/10 on the pain scale[,]" (Tr. 13), his decision is ambiguous from the standpoint of whether he believes that Ms. Lavender suffers from no pain (*i.e.*, 0/10) or alternatively some partial level of pain (*i.e.*, 5/10). This omission from the ALJ's decision is significant because a partially favorable credibility finding would mean that Ms. Lavender would likely meet her mild burden of showing that her lumbar arthralgia reasonably causes more than "a minimal effect on her ability to perform the most general and rudimentary functions of a work activity." *Flynn*, 768 F.2d at 1274. Accordingly, a remand is appropriate for this alternative reason.

A final flaw in the ALJ's decision relates to the definition of lumbar arthralgia, which medically determinable impairment the ALJ confirmed that Ms. Lavender had at step one. As set forth in n.5, *supra*, arthralgia may be used <u>indefinitely</u> to refer to a diagnosis of patient, "if examination and testing are inconclusive, but the pain persists." In sharp contrast, the ALJ hinges part of his decision that Ms. Lavender did

16

not suffer from a severe impairment upon the lack of objective medical proof substantiating some type of back condition. (*See, e.g.*, Tr. 13 ("No evidence of degenerative disc disease, *cauda equina* syndrome, deep vein thrombosis, or any other objective medical condition has been found.") (emphasis added)). The problem with the ALJ's logic is that it fails to account for that subset of patients who while properly diagnosed with arthralgia and still suffering from pain, are nevertheless without knowledge of the "true cause" of their joint pain, despite examination and testing. Accordingly, for all these independent reasons, the case is due to be remanded.

## **CONCLUSION**[9]

Based upon the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the Commissioner's final decision is not supported by substantial evidence. Accordingly, the decision of the Commissioner will be remanded by separate order.

---

[9] Because the court reverses the ALJ on the severe impairment inquiry, it does not reach the merits of the other issues presented on appeal, including whether the ALJ should have developed the record further by ordering a consultative examination of Ms. Lavender.

**DONE** and **ORDERED** this 28th day of February, 2011.

                                            **VIRGINIA EMERSON HOPKINS**
                                            United States District Judge